## SPORGEON v. MAHONY et al.

(Circuit Court of Appeals, Ninth Circuit. January 18, 1926. Rehearing Denied February 23, 1926.)

No. 4586.

Master and servant ⟜288(2), 289(15)— Whether second mate assumed all risk of using ring bolt in place of snatch block, or was contributorily negligent, held for jury.

In action by second mate of ship for injuries received while unloading cargo, when bolt to which he had fastened rope pulled out and rope struck him, whether plaintiff assumed all risk of using bolt as he did, or was guilty of contributory negligence, *held* for jury.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; George M. Bourquin, Judge.

Action by Oscar Sporgeon against Andrew F. Mahony and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

S. T. Hogevoll, of San Francisco, Cal., for plaintiff in error.

Farnham P. Griffiths, Harold A. Black, and McCutchen, Olney, Mannon & Greene, all of San Francisco, Cal., for defendants in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Writ of error to review a judgment following a directed verdict in favor of defendant in error in an action for personal injuries. Plaintiff below, a second mate on the ship Kirkpatrick, alleged that, while defendants were moving laths on the ship preparatory to unloading lumber, a certain rope was fastened to the ring of a loose and dangerous bolt, and that as the winchman, an employee of defendants, used the winch for pulling the rope so fastened to the ring, the bolt pulled out because of the way it was fastened to the deck, and because of the rotten condition of the deck, and as the bolt became loose the rope fastened to the bolt struck Sporgeon and injured him. The answer denied negligence, and pleaded assumption of risk and contributory negligence.

Plaintiff's evidence was as follows:

The ship was at the dock, with crew discharging a portion of her cargo of lumber. Sporgeon, second mate, an experienced seaman, was at the aft end of the ship. In order to unload some cargo from the hold, the chief officer directed Sporgeon to remove some bundles of lath from the top of the hatch aft and amidships. Sporgeon observed two ring bolts on either side of the winch. He went back aft, and saw the chief officer and the third officer using the same kind of ring bolts in loading the ship. It looked safe to him, but, as he doubted the strength of the rope, he wanted a snatch block, as he would have to reeve the line through one of the iron rings and thus put heavy wear on the rope. He asked for a block. The chief officer replied that he had not seen any, but that Sporgeon had better go forward and see if there were any. Sporgeon went and looked, but could not find a block. Thereupon, suspecting the strength of the rope, he directed that small loads be built. The windlass was in the poop deck, and, to bring the load of lath back to where it was required to be moved, Sporgeon carried a line to be fastened to the top of the load, which was hanging by falls, and ran the rope back from the load through one of the ring bolts screwed to the deck near the forward end of the poop. The line was then carried over

to the right, then around the chock, from where it would be wound around the spool of the windlass.

Sporgeon was standing on the deck in the angle of the line between the winch and the ring bolt, and while the load (about 1,500 pounds) was being swung aft the ring bolt pulled out of the deck, the line straightened out immediately, and threw Sporgeon back against some bitts, and injured him. The ring bolt has a lag screw, and is used for "various purposes on ships," to secure articles, and it is common, though not good practice, to run a line through a ring bolt of the kind referred to. Such bolts are specially for lashing down booms and the like, but may be used occasionally for discharging a load, though they are not intended for that purpose. Such a bolt on a straight pull would hold over two tons, but on a transverse pull very much less. The bolt was screwed to the deck, without fastening below, but one on the deck could not tell, by looking at it, whether or not it was clinched. Plaintiff testified that he put the rope around the ring bolt to hold the rope down, because, when they started to heave the load aft the deck, the load being about 2 feet above the poop deck and about 12 feet over the deck, the line "jumped off" the spool in the corner and nearly knocked him down. Defendant offered evidence tending to refute plaintiff's testimony.

The District Court held that the plaintiff misused the bolt and assumed all the risk attendant upon misuse. The only question is, therefore: Was the District Court justified in taking the case from the jury?

The appliance, of course, was not properly fastened for the strain put upon it. But if the plaintiff, under orders to move the lath at once, looked for and could not find a snatch block, and if the chock was impracticable and dangerous, and if, after he had seen the chief officer using similar bolts for lifting cargo in the way he used the one which pulled out, and acted without knowledge that the bolt was not fastened securely enough to hold under the strain of a load such as he was about to put upon it, we think it was for the jury to say whether plaintiff assumed all the risk of using the bolt the way he did, or was guilty of contributory negligence. There appeared enough to call for submission of the testimony as related to the doctrine that acquiescence of a master in the use of an appliance for some purpose other than that for which it was intended puts him in the same position as if the appliance

10 F.(2d)—10

had been originally furnished for that purpose. Labatt, Master and Servant, § 923.

The judgment is reversed, and the cause is remanded, with directions to grant a new trial.